**Nos. 25-8171, 25-8168**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

TAVON WILLIAMS,

Plaintiff-Appellant,

v.

CITY OF TACOMA, et al.

Defendants-Appellees.

IAN LEACH,

Plaintiff-Appellant,

v.

CITY OF TACOMA, et al.

Defendants-Appellees.

Appeals from the United States District Court
for the Western District of Washington (Tacoma)
Cases Nos. 3:24-cv-05055-DGE and 3:24-cv-05056-DGE

# APPELLEES' ANSWERING BRIEF

CHRISTOPHER D. BACHA, City Attorney
Michelle N. Yotter, WSBA# 49075
Deputy City Attorney
Attorney for Appellees
Tacoma City Attorney's Office
747 Market Street, Suite 1120
Tacoma, Washington 98402
(253) 591-5885

# TABLE OF CONTENTS

**I. INTRODUCTION**………………………………………………….....…1

**II. COUNTER STATEMENT OF ISSUES PRESENTED**……………….....3

1. Whether the district court correctly held that Appellants failed to establish a Fourth Amendment seizure.

2. Whether, assuming a seizure occurred, Officer Phan's conduct was objectively reasonable under the totality of the circumstances.

3. Whether Appellants identified clearly established law placing the alleged unlawfulness of Officer Phan's conduct beyond debate.

4. Whether the district court correctly dismissed the common-law negligence claims.

**III. STATEMENT OF THE CASE**…………………………………………3

A. NATURE OF THE CASE…………………………………………3

B. OFFICER PHAN RESPONDS TO AN ILLEGAL STREET-RACING TAKEOVER………………………………………………………4

C. OFFICER PHAN BECOMES TRAPPED INSIDE HIS PATROL VEHICLE AND ATTEMPTS TO ESCAPE…………………………7

D. THE OBJECTIVE EVIDENCE CONFIRMS THE CIRCUMSTANCES CONFRONTING OFFICER PHAN…………..9

E. PROCEEDINGS BELOW……………………………………….11

**IV. SUMMARY OF THE ARGUMENT**…………………………………12

**V. ARGUMENT**…………………………………………………….....15

A. STANDARD ON REVIEW AND SUMMARY JUDGMENT……..15

B. APPELLANTS HAVE ABANDONED FIVE OF THEIR SEVEN CAUSES OF ACTION…………………………………………………...16

C. APPELLANTS FAIL TO IDENTIFY REVERSIBLE ERROR……17

D. THE DISTRICT COURT CORRECTLY CONCLUDED THAT NO FOURTH AMENDMENT SEIZURE OCCURRED……………….19

1. Officer Phan Did Not Seize Appellants Because Fourth Amendment Seizure Requires Intentional Restraint………….20

2. Officer Phan Did Not Seize Appellants by Force…………….22

3. Officer Phan Did Not Seize Appellants by Acquisition of Control…………………………………………………………..27

E. EVEN IF A SEIZURE DID OCCUR, OFFICER PHAN'S ACTIONS WERE OBJECTIVELY REASONABLE…………………………..28

1. Appellants Improperly Characterize Officer Phan's Conduct As a Use Of "Deadly" Force……………………………………..29

2. The *Graham* Factors Weigh Decisively in Favor of Officer Phan……………………………………………………………..33

F. *BARNES* DOES NOT AUTHORIZE HINDSIGHT REVIEW OF OFFICER PHAN'S TACTICAL DECISIONS……………………..39

G. THE DISTRICT COURT CORRECTLY HELD OFFICER PHAN IS ENTITLED TO QUALIFIED IMMUNITY………………………...45

1. Appellants Bear the Burden of Identifying Clearly Established Law That Squarely Governs the Circumstances Confronting Officer Phan……………………………………………………..46

2. Appellants Identify No Clearly Established Law Prohibiting Officer Phan's Conduct……………………………………….47

H. THE DISTRICT COURT CORRECTLY DISMISSED APPELLANTS' STATE-LAW NEGLIGENCE CLAIMS............49

1. Appellants Forfeited Any Challenge to the District Court's Public Duty Doctrine Ruling.....................................50

2. The Public Duty Doctrine Independently Bars Appellants' Negligence Claims.................................................51

3. Even Assuming an Individualized Duty Existed, Officer Phan Did Not Breach Any Duty of Reasonable Care..................53

4. Appellants Cannot Recast an Alleged Intentional Use of Force as Ordinary Negligence...........................................55

**VI. CONCLUSION**.........................................................58

## TABLE OF AUTHORITIES

### Table of Cases

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)……………………………………………..…………15

Ashcroft v. al-Kidd,
563 U.S. 731 (2011)…………………………………………………….....46

Avila v. L.A. Police Dep't,
758 F.3d 1096 (9th Cir. 2014)………………………...……………………..16

Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.,
289 F.3d 589 (9th Cir. 2002)……………………………………………16, 43

Barnes v. Felix,
605 U.S. 73 (2025)……………………………………………….……….*passim*

Beltran-Serrano v. City of Tacoma,
193 Wn.2d 537, 442 P.3d 608 (2019)……………………………….…*passim*

Boyles v. City of Kennewick,
62 Wn. App. 174, 813 P.2d 178 (1991)…………………………………..56

Brosseau v. Haugen,
543 U.S. 194 (2004)…………………………………………………...…46

Brower v. County of Inyo,
489 U.S. 593 (1989)……………………………………………….….20, 27

Cty. of Sacramento v. Lewis,
523 U.S. 833 (1998)………………………………………………………20

City & County of San Francisco v. Sheehan,
575 U.S. 600 (2015)………………………………………………...…..42

Cheairs v. City of Seattle,
145 F.4th 1233 (9th Cir. 2025)……………………………………….*passim*

Chew v. Gates,
27 F.3d 1432 (9th Cir. 1994)……………………………………………………34

County of Los Angeles v. Mendez,
581 U.S. 420 (2017)………………………………………...………………41

District of Columbia v. Wesby,
583 U.S. 48 (2018)…………………………………………………...45, 46, 47, 48

Espinosa v. City & County of S.F.,
598 F.3d 528 (9th Cir. 2010)……………………………………….…………28

Estate of Biegert ex rel. Biegert v. Molitor,
968 F.3d 693 (7th Cir. 2020)…………………………………………..……41

Estate of Templeton v. Daffern,
98 Wn. App. 677, 990 P.2d 968 (2000)……………………………………….53

Goodwin v. Richland County,
832 F. App'x 354 (6th Cir. 2020)……………………………………………..42

Gonzalez v. City of Phoenix,
163 F.4th 1289 (9th Cir. 2026)……………………………………….…….20

Grange Ins. Ass'n v. Roberts,
179 Wn. App. 739, 320 P.3d 77 (2013),
review denied, 180 Wn.2d 1026 (2014)…………………………..…….56

Graham v. Connor,
490 U.S. 386 (1989)…………………………………………..……….*passim*

Greenwood v. F.A.A.,
28 F.3d 971, 977 (9th Cir. 1994)…………………………...…….16, 17, 50

Hansen v. United States,
7 F.3d 137 (9th Cir. 1993)………………………………………..……..…15

Hibbs v. Dep't of Human Res.,
273 F.3d 844 (9th Cir. 2001)……………………………………..……...…18

Independent Towers of Wash. v. Washington,
350 F.3d 925 (9th Cir. 2003)…………………………………..……………50

Kisela v. Hughes,
584 U.S. 100 (2018)……………………………………………………….46, 48

Lowry v. City of San Diego,
858 F.3d 1248 (9th Cir. 2017)………………………………………………15

Lum v. City of Grants Pass,
2011 WL 915385 (D. Or. Mar. 15, 2011),
aff'd, 484 F. App'x 89 (9th Cir. 2012)……………………………………….20

Mancini v. City of Tacoma,
196 Wn.2d 864, 479 P.3d 656 (2021)………………………………………..51

Malley v. Briggs,
475 U.S. 335 (1986)…………………………………………………………46

Miller v. Clark County,
340 F.3d 959 (9th Cir. 2003)…………………………………...……………28

Mullenix v. Luna,
577 U.S. 7 (2015)…………………………………………………………..46, 48

Munich v. Skagit Emergency Commc'n Ctr.,
175 Wn.2d 871, 288 P.3d 328 (2012)……………………………….………52

Norg v. City of Seattle,
200 Wn.2d 749, 522 P.3d 580 (2023)……………………………………….51

Olson v. Morris,
188 F.3d 1083 (9th Cir. 1999)………………………………………………55

Pearson v. Callahan,
555 U.S. 223 (2009)………………………………….……………...………45

Paladin Assocs. v. Mont. Power Co.,
328 F.3d 1145 (9th Cir. 2003)……………………………...………………50

Puente v. City of Phoenix,
123 F.4th 1035 (9th Cir. 2024)……………………………………………………22

Plumhoff v. Rickard,
572 U.S. 765 (2014)………………………………………………...……..47

Sanderlin v. Dwyer,
116 F.4th 905 (9th Cir. 2024)…………………………………………..23, 24, 26

Seidner v. de Vries,
39 F.4th 591 (9th Cir. 2022)………………………………………………..31, 32

Scott v. Harris,
550 U.S. 372 (2007)………………………………………..15, 29, 30, 31, 32, 48

Shafer v. County of Santa Barbara,
868 F.3d 1110 (9th Cir. 2017)………………………………………..…………46

State v. Huff-McKay,
No. 59812-4-II, 2026 Wash. App. LEXIS 1483
(Wash. Ct. App. June 30, 2026) (unpublished)……………………..….10, 23, 36

Tennessee v. Garner,
471 U.S. 1 (1985)…………………………………………………………..30, 48

Torres v. Madrid,
592 U.S. 306 (2021)…………………………………………………..13, 18, 21, 22

**Statutes and Constitutional Provisions**

42 U.S.C. §1983……………………………………………………………………4

U.S. Const., Fourth Amendment…………...……………………………….*..passim*

U.S. Const., Fourteenth Amendment …………………………...……………4, 16

**Rules**

Federal Rule of Appellate Procedure 28(a)(8)........................................17

# I. INTRODUCTION

This appeal presents an unusual question: whether a police officer attempting to escape an unlawful restraint imposed by a hostile crowd objectively seizes every person affected by his efforts to do so. The answer is no.

The case arises from an illegal street-racing takeover that devolved into a confrontation between police and a hostile crowd. Officer Phan responded in a marked patrol vehicle with his emergency equipment activated. Members of the crowd surrounded his patrol vehicle, attacked it, and prevented him from leaving. A criminal jury later found beyond a reasonable doubt that a crowd participant, Anthony Huff-McKay, unlawfully imprisoned Officer Phan by intentionally inciting the crowd for the purpose of preventing Officer Phan from escaping the intersection. That conviction has now been affirmed on appeal. In affirming, the Washington State Court of Appeals Division II confirmed the evidence established that the crowd restrained Officer Phan and prevented him from leaving the intersection.

Appellants nevertheless seek to transform Officer Phan's effort to terminate that unlawful restraint into a Fourth Amendment seizure of everyone affected by his movement through the crowd. The Fourth Amendment requires an objective intent to restrain; it does not transform an officer's attempt to regain his own freedom of movement into an intent to restrain every person standing nearby.

Appellants alternatively argue that Officer Phan forfeited any constitutional justification for his actions because he should have employed different tactics before becoming surrounded. But while the Supreme Court recently reaffirmed that courts evaluating excessive-force claims must consider the entire encounter, the Supreme Court did not constitutionalize disagreements over discretionary police tactics or revive the Ninth Circuit's rejected provocation rule. Despite Appellants' unfounded claim to the contrary, the controlling question remains whether Officer Phan's response to the totality of the circumstances confronting him was objectively reasonable.

The district court rejected all of Appellants' claims, yet Appellants' *Opening Brief* never explains why any of the district court's rulings were erroneous. Instead, Appellants ask this Court to reweigh the evidence and reach a different conclusion. That is not the role of appellate review.

Accordingly, the judgment should be affirmed because: (1) Officer Phan did not seize Appellants within the meaning of the Fourth Amendment; (2) even assuming a seizure occurred, Officer Phan's actions were objectively reasonable under the totality of the circumstances; (3) no clearly established law placed the constitutional question beyond debate; and, (4) Appellants' negligence claims fail as a matter of law.

## II. COUNTER STATEMENT OF ISSUES PRESENTED

1. Whether the district court correctly held that Appellants failed to establish a Fourth Amendment seizure.

2. Whether, assuming a seizure occurred, Officer Phan's conduct was objectively reasonable under the totality of the circumstances.

3. Whether Appellants identified clearly established law placing the alleged unlawfulness of Officer Phan's conduct beyond debate.

4. Whether the district court correctly dismissed the common-law negligence claims.

## III. STATEMENT OF THE CASE

### A. NATURE OF THE CASE.

This consolidated appeal arises from a rapidly evolving confrontation between Tacoma Police Patrol Officer Khahn Phan ('"Officer Phan"') and a large crowd participating in an illegal street-racing takeover in downtown Tacoma on January 23, 2021. Appellants, Tavon Williams and Ian Leach (collectively the "Appellants"), alleged that they were physically and emotionally injured when Officer Phan's patrol vehicle moved through the crowd after individuals surrounded and attacked the vehicle, obstructing its movement, and preventing Officer Phan from safely leaving the scene. Appellants contend that Officer Phan's actions constituted excessive force and negligence.

In the district court, Appellants each asserted seven causes of action: (1) excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) violation of the Fourteenth Amendment Due Process Clause; (3) municipal liability under *Monell v. Department of Social Services*; (4) common-law negligence; (5) negligent training and supervision; (6) intentional infliction of emotional distress; and, (7) negligent infliction of emotional distress.

The district court entered summary judgment in favor of the City of Tacoma and Officer Phan (collectively "Appellees") – dismissing all claims – correctly finding that no seizure had occurred, that Officer Phan was entitled to qualified immunity, and that the *Monell* and State law claims failed as a matter of law.

Through their *Opening Brief* Appellants challenge only the dismissal of their Fourth Amendment excessive-force claims and common-law negligence claims.

## B. OFFICER PHAN RESPONDS TO AN ILLEGAL STREET-RACING TAKEOVER.

On January 23, 2021, Officer Phan responded to the intersection of South 9th Street and Pacific Avenue in Tacoma after multiple 911 callers reported an illegal street-racing takeover. 7-ER-1618. Appellants characterize the event as an "upbeat" gathering of spectators and contend that "the crowd was not violent or dangerous." AOB at 4, 7. But that characterization is contradicted by both the objective video evidence **<u>and</u>** ***Appellant Leach's own testimony***. Contrary to the picture portrayed in the *Opening Brief*, Appellant Leach testified that he estimated the crowd that night

to be "three hundred plus" and characterized them as **"unpredictable," "lawless," "rowdy," "out of control," "violent," and "crazy."** 7-ER-1735, 1741; *see also* 7-ER-1615, Ex. 3 (1:17-2:00). Videos taken by spectators that night likewise depict a volatile and rapidly evolving scene. 7-ER-1615 Ex. 4 and Ex. 5.

Officer Phan responded to the area with the intent of dispersing the crowd. 7-ER-1619. During his nearly thirty years with the Tacoma Police Department ("TPD"), he had responded to numerous incidents involving illegal street racing or large crowds. Id. Based on that experience, Officer Phan expected the crowd to disperse once police arrived with emergency equipment activated. Id.

Officer Phan approached the intersection in a fully marked TPD patrol vehicle[1] with his emergency lights activated and air horn sounding. Id. Because of the crowd's size, he waited until a second patrol unit was on scene before he slowly began advancing toward the intersection. 7-ER-1620. Video recordings confirm that Officer Phan approached with his emergency lights activated and air horn sounding. 7-ER-1615, Ex. 5.

[1] Throughout their *Opening Brief*, Appellants repeatedly describe Officer Phan's patrol vehicle as an "armored" vehicle. AOB at 9, 31, 42, 43, 59, 60. That characterization is inaccurate and unsupported by any citation to the record. The vehicle at issue was a standard marked police patrol vehicle, **not an armored vehicle**. Because the record contains no evidence that the vehicle possessed armored capabilities or features, Appellants' repeated use of the term appears intended to create a misleading impression regarding the nature of the vehicle and the threat it allegedly posed.

Rather than dispersing – suddenly and without warning – the crowd turned and advanced upon Officer Phan's vehicle. Id., *see also* 7-ER-1620. Individuals surrounded the vehicle, obstructed its movement, kicked and punched the exterior, rocked the vehicle, and shouted obscenities at Officer Phan, including "fuck you" and "get the fuck out of here." Id. Officer Phan described the scene as a "mob frenzy." Id. Individuals were punching Officer Phan's windows with such force that he believed the windows would break. Id. Officer Phan observed someone throw a glass bottle full of liquid at the driver's side of his car. Id. He believed the object thrown at his car could be a "Molotov cocktail." Id.

Video taken by onlookers likewise confirms an aggressive and chaotic scene. The recordings show a large crowd occupying the roadway, surrounding Officer Phan's patrol vehicle, obstructing its movement, striking the vehicle, and refusing to clear the area despite the vehicle's activated emergency lights and air horn. 7-ER-1615, Ex. 4 and Ex. 5. The video further captures one member of the crowd, Anthony Huff-McKay, repeatedly urging the crowd to "block the cops," directing participants to prevent Officer Phan's patrol vehicle from leaving the intersection. Id., at Ex. 4.

Appellant Leach testified that, while standing in the roadway, just three to five feet in front of the patrol vehicle, he watched more than thirty individuals surround Officer Phan's vehicle and bang on it. 7-ER1740.

### C. OFFICER PHAN BECOMES TRAPPED INSIDE HIS PATROL VEHICLE AND ATTEMPTS TO ESCAPE.

Once the crowd converged, Officer Phan initially attempted to retreat by backing his patrol vehicle away from the crowd. 7-ER-1621. He was unable to do so. Id. The crowd had completely surrounded the vehicle, and his rearward view was obstructed by the combination of darkness, tire smoke generated by vehicles performing burnouts, and the large number of people surrounding the patrol car. Id.; *see also* 7-ER-1615 Ex. 5. As Officer Phan attempted to maneuver, the crowd continued to grow increasingly hostile, striking the vehicle, rocking it, and preventing its movement. Id.

At that point, Officer Phan believed he was trapped inside his patrol vehicle and feared for his life. 7-ER-1621. Officer Phan was carrying a fully loaded Glock 19 service pistol, and a fully loaded AR-15 rifle was inside the patrol vehicle. 7-ER-1619. While Officer Phan was concerned for his own safety, he was also concerned that members of the crowd could gain entry to the vehicle, overpower him, and obtain access to the firearms contained within it. 7-ER-1621.

As one individual began to climb onto the hood of the patrol vehicle, Officer Phan observed a small opening develop. 7-ER-1621. Faced with a rapidly evolving situation, he made the split-second decision to drive forward through that opening in an effort to escape the crowd. Id. Officer Phan testified that he proceeded as slowly and carefully as he could under the circumstances. Id. As the vehicle moved forward,

it came into contact with multiple individuals in the roadway, while others fell as the crowd around the vehicle surged. Id.

Appellants' testimony reflects dramatically different perceptions of the event – but both underscore the chaos. Leach testified that he saw the marked patrol vehicle and understood that Officer Phan was attempting to drive through the intersection. 7-ER-1737, 1742. Nevertheless, Leach followed the crowd into the roadway and positioned himself directly in front of the patrol vehicle. 7-ER-1739-40. Leach recorded with his phone as about thirty people surrounded and banged on Officer Phan's vehicle. 7-ER1740. Williams, by contrast, testified that he was in the roadway livestreaming vehicle stunts, but he did not observe the patrol vehicle, did not see its emergency lights or hear its air horn, did not hear anyone in the crowd yelling, and was completely unaware police were present. 6-ER-1504-08; *see also* 1-SER-002, Ex. 3 (video interview). Williams's video interview in the days following the event underscores the disorder confronting everyone at the scene. Although he has never served in the military, he described the experience as feeling "like [he] was in Iraq." 1-SER-002, Ex. 3 (8:51-9:35).

The record likewise does not support Appellants' repeated descriptions of Officer Phan "rapidly accelerating," "careening" into the crowd, or "smashing" into pedestrians. AOB 9, 42, 66. These assertions are not supported by expert analysis or any other admissible evidence, but instead rest on counsel's characterization of the

events. The only expert testimony regarding vehicle speed concluded that Officer Phan very briefly (for about one second) reached a speed of fifteen miles per hour, but then immediately decreased his speed and was traveling approximately four to six miles per hour when his vehicle came into contact with pedestrians. 6-ER-1556. Appellants offered no admissible evidence disputing that conclusion. The evidentiary record establishes that Officer Phan moved his patrol vehicle forward as slowly and as carefully as possible while attempting to extricate himself from a crowd that had surrounded, attacked, and immobilized the vehicle.

The crowd's conduct that night was not limited to Officer Phan's patrol vehicle. Another responding officer reported that members of the crowd attempted to open his vehicle door, shattered the rear window of his police cruiser, surrounded his vehicle, and shouted threats including "Pull him out," "Drag him out," and "Kill that cop." 7-ER-1754-56. These events further illustrate the volatile and dangerous conditions confronting officers at the scene.

### D. THE OBJECTIVE EVIDENCE CONFIRMS THE CIRCUMSTANCES CONFRONTING OFFICER PHAN.

The objective evidence confirms that Officer Phan was confronted by an increasingly hostile crowd that surrounded his patrol vehicle and prevented him from leaving the scene.

Following the incident, the Pierce County Force Investigation Team conducted an independent investigation. That investigation concluded that members

of the crowd aggressively surrounded police vehicles, obstructed their movement, struck the vehicles, and interfered with officers attempting to perform their duties. 7-ER-1752-63.

The investigation further determined that one participant repeatedly shouted "block the cops" and encouraged additional members of the crowd to converge on Officer Phan's patrol vehicle. 7-ER-1752. That participant, Huff-McKay, was subsequently convicted by a jury of unlawfully imprisoning Officer Phan, obstructing a law enforcement officer, and malicious mischief. 1-SER-048-057; 1-SER-064. Washington State Division II Court of Appeals has since affirmed those convictions. State v. Huff-McKay, No. 59812-4-II, 2026 Wash. App. LEXIS 1483 (Wash. Ct. App. June 30, 2026)(unpublished).[2]

The physical evidence leaves little doubt about the severity of the encounter. Photographs show extensive body damage to Officer Phan's patrol vehicle as well as substantial damage to another responding officer's patrol vehicle. Those photographs corroborate witness testimony that officers were surrounded by a hostile crowd that struck the vehicles, attempted to gain entry, and prevented their movement. 7-ER-1648-49, 7-ER-1656-1659; 7-ER-1756.

---

[2] Although unpublished, the opinion is cited not as precedential authority but because it arises from the same January 23, 2021, incident at issue in this appeal and affirms Huff-McKay's convictions for unlawfully imprisoning Officer Phan, unlawfully imprisoning Officer Cockle, obstructing a law enforcement officer, and second-degree malicious mischief related to the damage of the patrol vehicles.

## E. PROCEEDINGS BELOW.

Appellants filed separate lawsuits arising from the January 23, 2021, incident. 1-SER-071; 1-SER-082.

Following discovery, Appellees moved for summary judgment in each case. 7-ER-1783; 7-ER-1579. Appellees argued that Officer Phan did not seize Appellants within the meaning of the Fourth Amendment, that even if a seizure occurred Officer Phan's conduct was objectively reasonable under the circumstances, that qualified immunity barred the federal claims, and that Appellants' state-law claims failed as a matter of law. Id.

Before ruling on summary judgment, the district court granted Appellees' motion to exclude the opinions of Appellants' expert, Greg Gilbertson, in their entirety. 1-ER-0009; 1-ER-031. The district court concluded that Gilbertson's opinions lacked an adequate foundation, were speculative, and therefore failed to satisfy the requirements for admissible expert testimony. Id.

The district court subsequently granted summary judgment in favor of Appellees. 1-ER-002; 1-ER-0024. After reviewing the video evidence, witness testimony, and other materials submitted by the parties, the district court concluded that Appellants failed to establish a constitutional violation, that Officer Phan was entitled to qualified immunity, and that Appellants' state-law claims failed as a matter of law. 1-ER-003-23; 1-ER-025-43.

Appellants timely appealed. 7-ER-1819-20. The appeals were thereafter consolidated before this Court.

## IV. SUMMARY OF ARGUMENT

Appellants attempt to transform an officer's effort to escape an unlawful restraint imposed by a hostile crowd into a routine excessive-force case. The record does not support that characterization, and neither Supreme Court nor Ninth Circuit precedent supports the constitutional rules Appellants ask this Court to adopt. More fundamentally, although Appellants disagree with the district court's summary dismissal, Appellants never explain why the district court's analysis was erroneous. Instead, Appellants ask this Court to reweigh the evidence and reach different factual conclusions from the same record. That is not the function of appellate review.

As an initial matter, Appellants have abandoned five of the seven causes of action resolved by the district court. Only their Fourth Amendment excessive-force claims and common-law negligence claims remain before this Court.

First, the district court properly concluded that Officer Phan did not seize Appellants within the meaning of the Fourth Amendment. A seizure requires force applied with an objective intent to restrain. The undisputed evidence establishes that Officer Phan's objective was precisely the opposite. After his patrol vehicle was surrounded, immobilized, and attacked by a hostile crowd, Officer Phan attempted to extricate himself from the scene – not detain, confine, or otherwise acquire control

over Appellants. Appellants identify no error in the district court's application of *Torres*, *Puente*, or the governing seizure principles.

Second, even assuming a seizure occurred (when it did not), Officer Phan's conduct was objectively reasonable under the totality of the circumstances. The Supreme Court has reaffirmed that courts must consider the entire encounter – not merely the instant force is applied. Those circumstances included the crowd's unlawful restraint of Officer Phan, the attack on his patrol vehicle, his inability to safely retreat, the danger posed by an increasingly hostile crowd, and his measured effort to navigate through the only available opening while traveling approximately four to six miles per hour when his vehicle came into contact with Appellants.

Third, Appellants' "danger-creation" theory fails as a matter of law. Although *Barnes* requires courts to consider the events preceding the use of force as part of the totality of the circumstances, it did not revive the Supreme Court's rejected provocation rule or constitutionalize disagreements over discretionary police tactics. Nor do Appellants identify any admissible evidence establishing that Officer Phan's tactics violated any constitutional standard, departmental policy, training requirement, or accepted police practice. Having elected not to challenge the exclusion of their police-practices expert, Appellants rely only on counsel's hindsight criticism of Officer Phan's tactical decisions. Attorney argument is not evidence and cannot create a genuine dispute of material fact.

Fourth, Officer Phan is independently entitled to qualified immunity because Appellants identify no clearly established law placing the alleged unlawfulness of his conduct beyond debate. Appellants cite no authority involving an officer attempting to escape after being surrounded, immobilized, and attacked by a hostile crowd, nor any authority holding that discretionary tactical decisions preceding the use of force independently create Fourth Amendment liability.

Finally, the district court correctly dismissed Appellants' State law negligence claims. Appellants fail to challenge the district court's application of Washington's public duty doctrine, which provides this Court an independent basis to affirm. In any event, Officer Phan owed no individualized duty to Appellants, exercised reasonable care under the circumstances confronting him, and Appellants cannot repackage the same intentional conduct underlying their Fourth Amendment claim and relabel it as ordinary negligence.

Because Appellants fail to identify reversible error in any of the district court's rulings, the judgment should be affirmed in its entirety. The record, governing precedent, and applicable law all compel the same result: Officer Phan's effort to escape an unlawful restraint did not violate the Fourth Amendment, and Appellants' remaining state-law claims fail for multiple independent reasons.

## V. ARGUMENT

### A. STANDARD ON REVIEW AND SUMMARY JUDGMENT.

This Court reviews a grant of summary judgment de novo. Lowry v. City of San Diego, 858 F.3d 1248, 1254 (9th Cir. 2017).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the evidence is viewed in the light most favorable to the nonmoving party, the nonmoving party must present specific, admissible evidence demonstrating a genuine issue for trial and may not rely on conclusory allegations, speculation, or unsupported assertions. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250(1986); Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

When there is video footage, as there is here, and "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 167 L. Ed. 2d 686 (2007). This principle is dispositive here. The events at issue were captured on video. To the extent Appellants' characterization of the

encounter conflicts with those objective recordings, this Court need not accept that version of events[3].

## B. APPELLANTS HAVE ABANDONED FIVE OF THEIR SEVEN CAUSES OF ACTION.

The district court entered summary judgment on seven causes of action asserted by each Plaintiff. Appellants' *Opening Brief* challenges only the dismissal of their Fourth Amendment excessive-force claims and State common-law negligence claims. *See* AOB.

On appeal, arguments not raised by a party in its opening brief are deemed waived. Avila v. L.A. Police Dep't, 758 F.3d 1096, 1101 (9th Cir. 2014); Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994)("We review only issues which are argued specifically and distinctly in a party's opening brief.").

Appellants do not mention, much less challenge, the dismissal of their Fourteenth Amendment claims, *Monell* claims, negligent training and supervision

---

[3] Throughout their *Opening Brief*, Appellants **repeatedly** cite arguments advanced in prior district court briefing as though they were evidentiary facts. While there are many, two such examples are contained at: AOB at 6 ("Tacoma also trains its officers in general crowd-control techniques, which include using a vehicle's loudspeaker to disperse crowds. **5-ER-1134-35**."); and AOB at 10 ("Both Plaintiffs suffered physical and emotional injuries from being rammed by Defendant Phan's police SUV. **5-ER-1140; 6-ER-1345**."). To the extent Appellants rely on factual assertions contained in their prior summary judgment briefing rather than the underlying evidentiary record, such attorney argument is not evidence and cannot create a disputed issue of fact. *See* Barcamerica Int'l USA Trust v. Tyfield Importers, Inc., 289 F.3d 589, 593 n.4 (9th Cir. 2002).

claims, intentional infliction of emotional distress claims, or negligent infliction of emotional distress claims. Id.

Accordingly, the only issues properly before this Court are whether the district court erred in dismissing Appellants' Fourth Amendment excessive-force claims and their Washington common-law negligence claims[4]. Even as to those claims, however, Appellants never explain why the district court's analysis was erroneous.

### C. APPELLANTS FAIL TO IDENTIFY REVERSIBLE ERROR.

This Court reviews the rulings of the district court, not the case anew. Accordingly, Appellants bear the burden of identifying the specific legal or factual errors allegedly committed by the district court and explaining why those rulings require reversal. Under Federal Rule of Appellate Procedure 28(a)(8), an appellant's brief must contain the appellant's contentions, the reasons for them, and citations to the authorities and parts of the record relied upon. Consequently, the Ninth Circuit reviews only issues "argued specifically and distinctly" in the opening brief. Greenwood, 28 F.3d at 977. This Court will not manufacture arguments for an

---

[4] As an additional issue, Appellants note that they do not challenge the district court's order excluding the expert testimony at summary judgment and suggest they may seek to present that testimony at a future trial. AOB at 63. Because Appellants do not appeal the exclusion order, that ruling is not before this Court. Appellants correctly concede this appeal must be decided on the evidentiary record that was properly before the district court when it granted summary judgment. Whether Gilbertson's testimony could be offered in any future proceedings is therefore irrelevant to the issues presented on appeal and requires no response from Appellees.

appellant, as a bare assertion of error does not preserve a claim. Id.; *see also* Hibbs v. Dep't of Human Res., 273 F.3d 844, 873 n.34 (9th Cir. 2001)(deeming a one-sentence argument "too undeveloped to be capable of assessment").

Although Appellants assert – in section headings, the Summary of Argument, and in their Conclusion – that the district court erred by not considering the video evidence in a light most favorable to them, they never identify any specific legal or factual error in the district court's analysis. AOB at 3, 22, 67. Instead, they simply disagree with the district court's ultimate conclusions and ask this Court to reach a different result. Likewise, their Statement of Issues Presented asserts that "the officer seeking summary judgment failed to construe the facts in the light most favorable to plaintiff." AOB at 2; *see also* AOB at 22. That assertion itself fundamentally misstates the summary judgment standard. It is the district court – *not the moving party* – that determines whether the evidence, viewed in the light most favorable to the nonmoving party, presents a genuine dispute of material fact.

Beyond those generalized assertions, Appellants never explain why the district court's analysis was erroneous. Although they argue that a jury *could* conclude Officer Phan seized them and used excessive force, they never explain why the district court's application of *Torres* or *Puente* was incorrect in concluding that Officer Phan's conduct did not objectively manifest an intent to restrain. Nor do Appellants explain why the district court's alternative qualified immunity analysis

or dismissal of their negligence claims was legally incorrect. Instead, Appellants simply ask this Court to draw different factual inferences from the same record and reach a different result.

That is not the function of appellate review. Although review of a summary judgment order is de novo, de novo review does not transform appellate review into a retrial on a written record. The issue is whether the district court erred in concluding that summary judgment was appropriate under the governing law – not whether this Court might draw different factual inferences from the same record. Simply asserting that the evidence *could* support a different outcome is not a substitute for demonstrating that the district court's analysis was erroneous. As discussed below, Appellants fail to demonstrate reversible error in any of the district court's independent grounds supporting the judgment.

### D. THE DISTRICT COURT CORRECTLY CONCLUDED THAT NO FOURTH AMENDMENT SEIZURE OCCURRED.

Through the *Opening Brief*, Appellants never explain why the district court erred in concluding that Officer Phan did not seize them within the meaning of the Fourth Amendment. Instead, Appellants simply ask this Court to draw different factual inferences from the same record. The district court's analysis was correct.

Appellants' Fourth Amendment claims fail for a fundamental reason: the Fourth Amendment is not implicated unless a seizure occurred. Accordingly, the Court's analysis begins – and in this case should end – with the question whether

Officer Phan seized Appellants. *See* Gonzalez v. City of Phoenix, 163 F.4th 1289, 1297(9th Cir. 2026)( holding that the threshold inquiry under the Fourth Amendment is whether a seizure occurred);*see also* Lum v. City of Grants Pass, 2011 WL 915385, at 13–14, aff'd, 484 F. App'x 89 (9th Cir. 2012)(recognizing that the existence of a seizure is a threshold requirement for both unreasonable seizure and excessive force claims).

Because a seizure requires an objective intent to restrain through means intentionally applied, on this record, the district court correctly concluded that no seizure occurred. However, even if this Court were to find a seizure occurred, Appellants' claims still fail because Officer Phan's actions were objectively reasonable under the circumstances.

**1. Officer Phan Did Not Seize Appellants Because Fourth Amendment Seizure Requires Intentional Restraint.**

Not every governmental action resulting in injury constitutes a seizure under the Fourth Amendment. Rather, "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement," but only when there is a governmental termination of freedom of movement through means intentionally applied. Cty. of Sacramento v. Lewis, 523 U.S. 833, 844, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998) (*quoting* Brower v. County of Inyo, 489 U.S. 593, 597, 103 L. Ed. 2d 628, 109 S. Ct. 1378 (1989)).

Building on that principle, the Supreme Court has made clear that "a seizure requires the use of force with intent to restrain." Torres v. Madrid, 592 U.S. 306, 317, 141 S. Ct. 989, 209 L.Ed.2d 190 (2021). The relevant inquiry is whether the challenged conduct objectively manifests an intent to restrain. Id. Although the amount of force used may be relevant to that inquiry, "accidental force will not qualify," nor will **"force intentionally applied for some other purpose."** Id. [emphasis added].

The Supreme Court recognizes two forms of seizure: seizure by force and seizure by acquisition of control. Id. at 322. A seizure by force involves "the application of physical force to the body of a person with intent to restrain." Id. at 325. A seizure by acquisition of control occurs through either voluntary submission to a show of authority or a governmental termination of freedom of movement. Id. at 322. Regardless of the form of seizure alleged, the governmental conduct must objectively manifest an intent to restrain. Id. at 317.

Appellants' theory improperly conflates *intentional* conduct with an *intent* to restrain. The Supreme Court has never held that every intentional application of force constitutes a seizure. To the contrary, *Torres* expressly distinguishes between force intentionally applied and force intentionally applied with an objective intent to restrain. Id. If the mere intentional application of force were sufficient, the Supreme

Court's repeated emphasis on the intent-to-restrain requirement would be meaningless.

Consistent with *Torres*, the Ninth Circuit has held that the "requisite intent to restrain is present **only** when the force applied objectively aims at detaining or confining the person." Puente v. City of Phoenix, 123 F.4th 1035, 1052 (9th Cir. 2024) [emphasis added]. Force used merely to disperse, exclude, move, or otherwise affect an individual without objectively aiming to detain or confine the individual **does not constitute a seizure**. Id.

2. **Officer Phan Did Not Seize Appellants by Force.**

Appellants cannot establish a seizure by force because the undisputed evidence demonstrates that Officer Phan's conduct did not objectively manifest an intent to restrain Williams or Leach.

**Appellants repeatedly concede that Officer Phan's objective was to leave the scene and escape the crowd that had surrounded his patrol vehicle.** AOB at 14, 30, 34. Indeed, Appellants expressly contend that Officer Phan used force "to effectuate his departure from the intersection." AOB at 14. The relevant question, however, is not whether Officer Phan *intentionally* drove forward; nor is it whether he *intended* to pass through the crowd. The relevant question is whether his conduct objectively manifested an *intent to restrain* Williams or Leach. Torres, 592 U.S. at 317. It did not.

Nothing in the record suggests that Officer Phan was attempting to detain, confine, arrest, or otherwise acquire control over either Williams or Leach. To the contrary, the undisputed evidence establishes that Officer Phan drove forward for one purpose: to escape a hostile crowd that had surrounded his patrol vehicle, blocked its movement, and prevented him from leaving the intersection. The criminal proceedings confirm this point. Huff-McKay, one of the individuals in the crowd, was convicted of unlawfully imprisoning Officer Phan and obstructing a law enforcement officer after inciting the crowd to prevent Officer Phan's patrol vehicle from leaving the intersection. 1-SER-048-57; 1-SER-064; *see also* Huff-McKay, 2026 Wn. App., LEXIS 1483.

That conviction underscores what the video evidence, physical evidence, and witness testimony all establish: **Officer Phan – not Appellants – was the person whose freedom of movement had been intentionally restrained.**

That undisputed fact powerfully illustrates the flaw in Appellants' seizure theory. The Fourth Amendment requires an objective manifestation of intent to restrain. Here, the evidence establishes that Officer Phan was attempting to end a restraint being imposed upon him, not impose a restraint upon Appellants.

Neither *Sanderlin v. Dwyer*, 116 F.4th 905 (9th Cir. 2024), nor *Cheairs v. City of Seattle,* 145 F.4th 1233 (9th Cir. 2025) supports Appellants' contention that a seizure occurred here. To the contrary, both decisions underscore that the relevant

inquiry is whether the officer objectively manifested an intent to restrain through the force employed.

It is demonstrative that in *Sanderlin*, the law enforcement officer intentionally fired a 40-millimeter foam baton round directly at the plaintiff. Sanderlin, 116 F.4th at 908. The Ninth Circuit concluded that a seizure occurred because the munition was "chiefly designed, intended, and used for the purpose of incapacitating its target." Id., at 913. The court emphasized both the design of the munition and the manner in which it was deployed directly at the plaintiff. Id. *Sanderlin* thus illustrates the type of conduct that objectively manifests an intent to restrain – a purpose fundamentally different from Officer Phan's attempt to escape a crowd that had immobilized his patrol vehicle.

Likewise, in *Cheairs*, the Ninth Circuit held that the underlying record permitted competing inferences regarding whether an officer's deployment of a blast-ball grenade objectively manifested an intent to restrain or merely an intent to disperse the crowd. 145 F.4th at 1242–43. In making that determination, the Court considered where the device landed, whether it was directed at particular individuals or the space between the crowd and the police, and the surrounding circumstances. Id. at 1242–45. Although the Court held the seizure issue could not be resolved on summary judgment, it nevertheless concluded the force used was objectively reasonable because officers reasonably perceived an immediate threat to the safety

of officers, citizens, and property. Id. at 1245–46. *Cheairs* thus reinforces that the dispositive inquiry is whether an officer's conduct objectively manifests an intent to restrain. Here, the undisputed evidence demonstrates that Officer Phan objectively manifested an intent to escape the crowd surrounding his patrol vehicle – not to restrain Appellants.

Appellants' reliance on *Puente* is similarly misplaced. AOB 33. For example, the librarian hypothetical referenced by Appellants and discussed in *Puente* involves a person physically taking control of another individual's movement and directing where that individual will go. Id., at 1052. Whether by grabbing a patron and escorting him to the door or physically carrying him outside, the librarian exercises dominion and control over the patron's movement. Id. Here, by contrast, Officer Phan did not attempt to direct Appellants' movement, confine them to a location, or move them under his control. He was attempting to move himself and his vehicle out of a dangerous situation. The objective intent reflected by his conduct was not restraint, but escape.

The cases discussed above reinforce the principle that a seizure occurs only when force objectively manifests an intent to restrain. Here, Officer Phan's conduct objectively manifested the opposite intent. Officer Phan was not attempting to incapacitate, detain, apprehend, or otherwise acquire control over Appellants. Nor was Officer Phan attempting to disperse a crowd through force. Rather, he was

attempting to extricate himself from a crowd that had encircled his patrol vehicle, obstructed its movement, and prevented him from leaving the area.

Indeed, the distinction the Ninth Circuit found significant in *Cheairs* – whether force was directed toward restraining individuals or creating space – supports affirmance here. 145 F.4th 1242-42. Officer Phan's conduct objectively manifested the latter. He drove forward to create an avenue of escape from a crowd that had surrounded his patrol vehicle and prevented him from leaving the intersection. Unlike the officer in *Sanderlin*, and unlike the inference that precluded summary judgment on the seizure issue in *Cheairs*, Officer Phan did not employ force as a means of restraining others. He employed movement as a means of ending the restraint being imposed upon him.

Accordingly, neither *Sanderlin*, *Cheairs*, nor *Puente* establishes that a seizure occurred under the unique circumstances presented to this Court for review.

An officer attempting to free himself from restraint is not attempting to restrain others. Because Officer Phan's conduct was undisputedly directed toward escaping confinement – not toward detaining or confining Appellants – it did not objectively manifest an intent to restrain. Accordingly, Appellants cannot establish a seizure by force.

### 3. Officer Phan Did Not Seize Appellants by Acquisition of Control.

Appellants likewise cannot establish a seizure by acquisition of control.

A seizure by acquisition of control occurs when an individual submits to a show of authority or when the government intentionally terminates a person's freedom of movement through means designed to acquire control over that individual. Torres, 592 U.S. at 322; Brower, 489 U.S. at 597-99.

Neither circumstance is present here. Appellants did not submit to a show of authority, nor did Officer Phan employ his patrol vehicle as a means of stopping, capturing, detaining, or controlling Appellants. Officer Phan did not establish a roadblock, create a containment tactic, or otherwise use his vehicle to terminate Appellants' freedom of movement. Rather, the undisputed evidence demonstrates that Officer Phan used his vehicle to free himself from a crowd that had aggressively surrounded and trapped his patrol car.

The fact that Officer Phan's vehicle came into contact with individuals in the roadway does not transform his conduct into a seizure by acquisition of control. The Fourth Amendment requires governmental conduct objectively directed toward restraining or acquiring control over the individual. *See* Id. Nothing in the record would permit a reasonable jury to conclude that Officer Phan employed his vehicle as a means of acquiring control over Appellants or any other individual member of the mob attacking Officer Phan and his patrol vehicle. To the contrary, the evidence

demonstrates that the crowd – not Officer Phan – was exercising control over movement at the scene. The crowd surrounded the patrol vehicle, obstructed the vehicle's movement, assaulted the vehicle, and intentionally prevented Officer Phan from leaving the area. Under these circumstances, Appellants cannot establish a seizure by acquisition of control.

Because Appellants cannot establish either a seizure by force or a seizure by acquisition of control, their Fourth Amendment claims fail as a matter of law.

### E. EVEN IF A SEIZURE DID OCCUR, OFFICER PHAN'S ACTIONS WERE OBJECTIVELY REASONABLE.

Even assuming *arguendo* that Officer Phan seized Appellants within the meaning of the Fourth Amendment, Appellants' excessive force claims nevertheless fail because the force used was objectively reasonable under the totality of circumstances confronting Officer Phan.

The first requisite element of the excessive force inquiry requires the court to assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted. Espinosa v. City & County of S.F., 598 F.3d 528, 537 (9th Cir. 2010) (*quoting* Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003)).

1. **<u>Appellants Improperly Characterize Officer Phan's Conduct As a Use Of "Deadly" Force.</u>**

Appellants repeatedly assert that Officer Phan employed "deadly force" when his patrol vehicle came into contact with Appellants at approximately **four to six miles per hour**, after briefly accelerating to navigate through the only available opening in the violent crowd to escape unlawful restraint. AOB 1, 6, 20, 22, 27, 37, 38, 46. In fact, Appellants' entire appellate framework hinges on the legally untenable premise that *any* contact between a law enforcement vehicle and a pedestrian constitutes a *per se* application of deadly force. Neither the Supreme Court nor the Ninth Circuit has ever adopted such a categorical rule. To the contrary, federal jurisprudence requires courts to evaluate vehicular force based upon the specific manner in which the vehicle was used, the risks objectively created, and the circumstances confronting the officer.

Appellants ask this Court to adopt a categorical rule that *any* contact between a police vehicle and a pedestrian constitutes deadly force. *See* AOB 40. The Supreme Court directly considered – and flatly rejected – this exact argument in *Scott*.

In *Scott*, an officer intentionally applied his push bumper to the rear of a fleeing suspect's vehicle, triggering a crash that rendered the suspect a quadriplegic. <u>Scott</u>, 550 U.S. at 375. The respondent argued that because a police cruiser is capable of causing catastrophic injury or death, its deployment must be categorized as a *per*

*se* use of deadly force under the rigid preconditions of *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985).

The Supreme Court rejected that categorical approach, making clear that the constitutional inquiry turns on the specific factual circumstances surrounding the incident rather than the instrumentality employed. Scott, at 383-84.

That principle is dispositive here. Nothing in the record suggests that Officer Phan was traveling at a high rate of speed, using his patrol vehicle as a ramming device, or intentionally attempting to strike pedestrians. To the contrary, the undisputed evidence demonstrates that Officer Phan was attempting to extricate himself from an unruly crowd that had surrounded his vehicle, obstructed its movement, attacked the vehicle, and prevented his departure. The Appellees' accident reconstruction expert concluded that although Officer Phan's patrol vehicle briefly (for about one second) reached approximately fifteen miles per hour while navigating through the crowd, it continuously decelerated thereafter and was traveling only approximately four to six miles per hour when it came into contact with Appellants. These are uncontested facts, established in the record that cannot be disputed here; Appellants identify no admissible evidence disputing those facts. Yet throughout their *Opening Brief*, Appellants repeatedly characterize Officer Phan's conduct as "rapid" acceleration, "careening" into the crowd, and "smashing"

into pedestrians. AOB at 1, 6, 10, 20, 27. Those descriptions find no support in the evidentiary record.

This Circuit has also refused to label low-impact or technical vehicular contact as deadly force, recognizing that automobiles operate on a wide spectrum of risk. In Seidner v. de Vries, 39 F.4th 591 (9th Cir. 2022), an officer brought his police SUV to a stop directly in the path of a suspect fleeing on a bicycle causing a direct collision. Id., at 595. Despite the direct impact, the Ninth Circuit explicitly held that the vehicular roadblock constituted non-deadly "intermediate force" because the mechanics of the collision did not carry an inherent, predictable risk of death. Id., at 599. *Seidner* forecloses Appellants' assertion that *any* contact with a police vehicle automatically constitutes deadly force. Id. The relevant inquiry is not whether a vehicle was involved, but how it was used under the particular circumstances presented.

Consistent with *Scott* and *Seidner*, this Court must evaluate the totality of the circumstances – including the speed of the vehicle, the manner in which it was operated, the risks it objectively created, and the circumstances confronting the officer – before determining the nature, extent, and reasonableness of the force at issue.

When those factors are considered, Appellants' deadly force argument collapses. Officer Phan proceeded as slowly and carefully as possible under the

circumstances. The undisputed evidence establishes that Officer Phan was traveling at approximately four to six miles per hour – roughly a walking pace – when he made contact with pedestrians while attempting to navigate through an opening in the crowd in a valiant attempt to and avoid injury to those around him. 7-ER-1782.

The resulting pedestrian injuries likewise confirm the limited nature of the force employed. No individual was killed or suffered a life-threatening injury. At most, the record reflects that Leach suffered minor injury to his knees (2-ER-1615 Ex. 3 at 2:00 – 2:47) and Williams alleges soft-tissue injuries and PTSD (*see* 2-ER-697-979). While the absence of serious physical injury is not dispositive, it is entirely consistent with the undisputed evidence that Officer Phan, reasonably fearing for his safety, was traveling as slowly and as cautiously as possible while attempting to escape a crowd that had encircled and immobilized his vehicle.

The facts before this Court bear little resemblance to the cases upon which Appellants rely. Unlike Appellants' cited cases – wherein officers intentionally rammed fleeing suspects, accelerated toward individuals, or deliberately used a vehicle as an instrument of apprehension – Officer Phan was attempting to escape a volatile situation while minimizing the risk of injury to those in his path.

Under *Scott* and *Seidner*, the mere fact that a vehicle was involved does not transform Officer Phan's conduct into deadly force. The constitutional inquiry turns on the manner in which the vehicle was used and the risks it objectively created. The

record before this Court undeniably demonstrates a measured and cautious effort to secure an avenue of escape – not the intentional deployment of deadly force.

### 2. The *Graham* Factors Weigh Decisively in Favor of Officer Phan.

Even assuming a seizure occurred, the force employed was objectively reasonable under the totality of the circumstances confronting Officer Phan.

Claims of excessive force arising in the course of a seizure are governed by the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989). The inquiry is whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. Id., 397. This analysis must be conducted from the perspective of a reasonable officer on the scene – not with the benefit of hindsight – and must account for the fact that officers are often required to make split-second decisions in circumstances that are "tense, uncertain, and rapidly evolving." Id. at 396–97.

The Supreme Court recently reaffirmed that this objective reasonableness inquiry is not confined to the moment force is applied. Rather, courts must consider "all the relevant circumstances," including the events leading up to the use of force, because the totality of the circumstances inquiry has "no time limit." Barnes v. Felix, 605 U.S. 73, 80, 145 S. Ct. 1353, 221 L.Ed.2d 751 (2025). Thus, earlier events may inform how a reasonable officer would understand and respond to the circumstances

confronting him at the moment force is used. Accordingly, this Court must evaluate the *Graham* factors in light of the entire encounter – not merely the instant Officer Phan accelerated his patrol vehicle.

In evaluating reasonableness, courts must balance the nature and quality of the intrusion against the governmental interests at stake. Graham, 490 U.S. at 396. Relevant considerations include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and, (3) whether the individual is actively resisting arrest or attempting to evade arrest by flight. Id. The second factor – whether there is an immediate threat to the safety of officers or others – is "the most important single element" of the analysis. Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994).

Through the *Barnes* decision, the Supreme Court confirms that Appellants cannot separate Officer Phan's decision to accelerate from the events that made the decision to accelerate necessary. The relevant circumstances included the crowd's unlawful imprisonment of Officer Phan; the repeated blows to his marked patrol vehicle; the crowd's refusal to permit Officer Phan's exit; the inability to safely reverse because of darkness, smoke, and the crowd surrounding his vehicle; the risk that members of the crowd would breach the patrol vehicle; and, the limited opening through which Officer Phan could attempt escape. Those circumstances informed

what a reasonable officer would perceive and how a reasonable officer would respond.

The Ninth Circuit recently reaffirmed these principles in *Cheairs*, recognizing that force employed during volatile crowd-control events must be evaluated in light of the practical realities confronting the officers responding to large, fluid, and rapidly evolving gatherings. Such an officer is not afforded the luxury of prolonged deliberation while a dynamic and violent crowd boils and is changing by the second.

Few situations present stronger governmental interests than an officer attempting to escape an unlawful imprisonment while surrounded by a violent crowd.

First, Officer Phan was responding to an ongoing criminal event involving an illegal street-racing takeover that had overtaken a major public intersection. What began as enforcement of traffic and public-order laws rapidly escalated into violent criminal conduct directed at a law enforcement officer. Members of the crowd surrounded Officer Phan's patrol vehicle, obstructed its movement, attacked the vehicle, and prevented him from leaving the area. It is demonstrative that the situation culminated in Huff-McKay's conviction for unlawful imprisonment and obstruction of a law enforcement officer based on his role in preventing Officer Phan from leaving the scene.

The governmental interests were especially compelling because ***the only person a jury has determined was unlawfully restrained that night was Officer Phan.*** Huff-McKay was convicted of unlawful imprisonment for preventing Officer Phan from leaving the scene. Although Huff-McKay's conviction was entered after the incident (and later affirmed by Division II), it reflects a judicial determination that the relevant conduct of the mob – which Appellants were part of – resulted in the unlawful restraint of Officer Phan. *See* Huff-McKay, 2026 Wn. App., LEXIS 1483. This judicial determination is supported by uncontroverted and obvious video evidence and witness testimony both of which independently establish Officer Phan was being unlawfully restrained. Officer Phan's subsequent defensive use of his patrol vehicle was therefore undeniably intended to escape from that unlawful restraint – not intended to impose restraint upon any third party – especially Appellants.

Second – and most importantly – Officer Phan confronted an immediate and escalating threat to his safety. Officer Phan faced a nightmarish and perilous situation: Officer Phan was alone inside his patrol vehicle; Officer Phan was substantially outnumbered; Officer Phan was unable to safely reverse because of darkness, smoke, and the crowd surrounding his vehicle; and, Officer Phan was under physical attack from multiple individuals striking and rocking the vehicle in which he sat alone. The threat was not speculative – it was real. Individuals were

attempting to climb onto the patrol vehicle, striking the windows with sufficient force that Officer Phan believed the glass might shatter, and throwing objects at the vehicle. The crowd had already demonstrated both the intent and ability to prevent Officer Phan from leaving. Officer Phan genuinely feared for his safety – as any reasonable person would.

Despite Officer Phan's reasonably objective fear, the relevant governmental interest extended beyond Officer Phan's personal safety. Officer Phan's patrol vehicle contained a loaded Glock 19 service pistol on his person and a loaded AR-15 rifle inside the vehicle. If members of the crowd succeeded in breaching the patrol vehicle and overpowering Officer Phan, they could gain access to those firearms, dramatically increasing the danger not only to Officer Phan but to every member of the surrounding crowd and every responding officer. The Fourth Amendment does not require Officer Phan to remain trapped until that risk becomes reality.

Nor was Officer Phan attempting to use force to apprehend or punish anyone. Officer Phan's objective was to restore his own freedom of movement, extricate himself from an unlawful restraint, and prevent an increasingly dangerous confrontation from escalating further. The governmental interest therefore included protecting the safety of the officer, preventing the loss of department-issued firearms, restoring order, and allowing law enforcement to resume control of an intersection that had been overtaken by hundreds of participants.

The third *Graham* factor carries little weight with the record before this Court because Officer Phan was not attempting to arrest any member of the mob – let alone either of the Appellants. Regardless, the third factor supports the reasonableness of Officer Phan's conduct. The undisputed evidence establishes that Officer Phan's actions were not directed toward apprehending Appellants but toward escaping a dangerous and rapidly deteriorating situation.

Balancing those compelling governmental interests against the limited intrusion at issue confirms the objective reasonableness of Officer Phan's conduct. As discussed above, Officer Phan proceeded as slowly and as cautiously as possible while attempting to navigate through a momentary opening in the crowd. Officer Phan used his patrol vehicle as a means of escape – not as a weapon – and attempted to minimize injury while restoring his own freedom of movement.

*Cheairs* likewise reinforces this conclusion. Although the Ninth Circuit held that the seizure question could not be resolved on summary judgment, it nevertheless concluded that the force employed was objectively reasonable under the totality of the circumstances. 145 F.4th at 1245–46. The governmental interests confronting Officer Phan were substantially greater. Unlike the officers in *Cheairs*, Officer Phan was trapped alone inside a patrol vehicle that had been surrounded, immobilized, and attacked by a hostile crowd while facing the very real possibility that the mob could breach the vehicle, overtake him, and gain access to his department-issued

firearms. If the force employed in *Cheairs* was objectively reasonable under those circumstances, then Officer Phan's measured effort to escape an unlawful restraint and prevent a rapidly escalating threat was likewise objectively reasonable.

The Fourth Amendment does not require officers to remain trapped inside a patrol vehicle while surrounded and attacked by a hostile crowd, nor does it require officers to wait until an already dangerous situation becomes catastrophic before taking reasonable action to protect themselves and others. Considering the totality of the circumstances confronting Officer Phan, no reasonable jury could conclude that his conduct violated the Fourth Amendment.

### F. *BARNES* DOES NOT AUTHORIZE HINDSIGHT REVIEW OF OFFICER PHAN'S TACTICAL DECISIONS.

Unable to establish that Officer Phan seized Appellants or used objectively unreasonable force under the totality of the circumstances confronting him, Appellants shift their focus to criticizing Officer Phan's tactical decisions before the encounter escalated. Appellants argue Officer Phan should have waited for additional officers, used his patrol vehicle's loudspeaker, approached the intersection differently, reversed his patrol vehicle, or otherwise avoided becoming surrounded by the crowd. AOB 6, 7, 12, 22, 55. Although Appellants disclaim reliance on the Supreme Court's rejected provocation rule, *see* AOB 56 n.8, the substance of Appellants argument remains the same: Officer Phan's pre-encounter

tactical decisions allegedly created the circumstances that ultimately resulted in the challenged use of force.

Appellants correctly observe that the *Barnes* decision requires courts evaluating excessive-force claims to consider the entire encounter because the objective reasonableness inquiry encompasses "all the relevant circumstances" and "has no time limit." Barnes, 605 U.S. at 80. But *Barnes* did not alter the governing standard established in *Graham*. Even when considering the entire encounter, courts must evaluate an officer's conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Thus, *Barnes* expanded the temporal scope of the *Graham* inquiry; it did not authorize courts to second-guess discretionary tactical decisions with the benefit of hindsight.

That is precisely what Appellants ask this Court to do. Appellants' theory is not that Officer Phan's response to the circumstances actually confronting him was objectively unreasonable; rather, Appellants speculate that had Officer Phan waited longer, approached differently, used his loudspeaker, reversed sooner or longer, or employed different crowd-control tactics, the confrontation *might* never have occurred. But the Fourth Amendment does not require courts to reconstruct police encounters based on hypothetical alternatives. Even under *Barnes*, the appropriate constitutional question remains whether Officer Phan's conduct was objectively

reasonable in light of the circumstances he actually confronted – not whether different tactical decisions might, in hindsight, have produced a better outcome. Appellants' theory is therefore incompatible with the very *Graham* standard that *Barnes* reaffirmed.

That understanding is consistent with holding in *County of Los Angeles v. Mendez*, which rejected the Ninth Circuit's provocation rule. 581 U.S. 420, 428–31 (2017). Although *Barnes* requires courts to consider pre-force events as part of the totality of the circumstances, nothing in *Barnes* revived the provocation rule. Indeed, in *Peck v. Montoya*, this Court has recognized that the reasoning of *Mendez* forecloses attempts to premise excessive-force liability on earlier policy violations or tactical decisions. 51 F.4th 877 (9th Cir. 2022). Applying *Mendez*, this Court's decision in *Peck* explained that if an excessive force claim cannot be built upon a distinct and prior *constitutional* violation (such as an unlawful entry), "still less is it a claim that the officer used force after committing a policy violation that did not itself violate the Fourth Amendment." Id. at 892. To hold otherwise would establish a standard of strict liability for law enforcement officers, a result that "is not the law." Id.

Other courts have reached the same conclusion. The Seventh Circuit explained that tactical mistakes that result in an avoidable use of deadly force do not usually amount to a Fourth Amendment violation. Estate of Biegert ex rel. Biegert

v. Molitor, 968 F.3d 693, 698 (7th Cir. 2020) (*citing* City & County of San Francisco v. Sheehan, 575 U.S. 600, 615 (2015)(Even if [the officers] misjudged the situation, Sheehan cannot "establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided."). Likewise, the Sixth Circuit held that "even assuming" officers "failed to reasonably plan their tactical operation before putting themselves in danger," those earlier decisions could not "be used to determine whether the later use of force was reasonable." Goodwin v. Richland County, 832 F. App'x 354, 358 (6th Cir. 2020).

Even if Appellants' tactical criticisms were legally relevant in the manner they propose – which they are not – their theory fails for lack of evidence. Appellants identify no constitutional decision, no statute, no departmental policy, no training bulletin, no operational protocol, no accepted law-enforcement standards, and no admissible expert testimony establishing that Officer Phan was required to wait for additional officers, use his loudspeaker, reverse his patrol vehicle, or employ any of the alternative tactics for which Appellants advocate. To the contrary, Appellants expressly decline to challenge the district court's exclusion of their police-practices expert. AOB 63–64. As a result, the record contains **no admissible evidence** establishing the professional standard against which Appellants ask this Court to judge Officer Phan's discretionary tactical decisions.

Appellants' theory likewise fails for lack of proof that any of their proposed alternatives would have changed the outcome. Appellants assume that different tactical decisions would have prevented the crowd from unlawfully imprisoning Officer Phan. But Appellants identify no admissible evidence supporting that assumption. The crowd's actions – including Huff-McKay's criminal conduct in inciting the crowd to prevent Officer Phan from leaving – were independent acts that Appellants simply presume would not have occurred had Officer Phan utilized a different tactical approach. Nothing in the record supports that speculation. Appellants identify **no admissible evidence** from which a reasonable jury could conclude that the alternative tactics they propose would have prevented the confrontation or materially altered the events that followed.

Indeed, Appellants' criticisms are supported ***entirely*** by citations to counsel's own summary judgment briefing below – not to evidence in the summary judgment record. *See e.g.*, AOB 5, 6, 7, (citing 5-ER-1117-36). Attorney argument is not evidence and cannot create a genuine dispute of material fact. Barcamerica Int'l USA Trust, 289 F.3d at 593 n.4. Without admissible evidence establishing either that Officer Phan violated accepted police practices or that the alternative tactics proposed by Appellants would have prevented the confrontation, Appellants ask this Court to constitutionalize counsel's hindsight disagreement with Officer Phan's discretionary tactical judgments. Without admissible evidence or supporting legal

authority, counsel for Appellants' hindsight criticism provides no basis for reversing the district court's judgment.

Moreover, considering the entire encounter – as *Barnes* requires – only reinforces the reasonableness of Officer Phan's response. Officer Phan approached the intersection with his emergency lights activated and air horn blaring, waited for a second patrol unit before advancing, and proceeded based on nearly thirty years of law enforcement experience responding to similar incidents. Once the crowd surrounded his patrol vehicle, obstructed its movement, struck the vehicle, and prevented him from leaving, the only relevant constitutional question became whether his response to those circumstances was objectively reasonable from the perspective of a reasonable officer on the scene. A jury subsequently answered that question by finding that Officer Phan himself was the victim of unlawful imprisonment after Huff-McKay intentionally incited the crowd to prevent Officer Phan from leaving. Officer Phan responded to this lawless behavior by attempting to end that unlawful restraint, by protecting himself and the public from an escalating threat, and by navigating through the only available opening in the crowd. The Fourth Amendment requires no more.

Finally, Appellants' theory independently fails under qualified immunity. Appellants identify no clearly established law holding that an officer violates the Fourth Amendment because a reviewing court later concludes different tactical

decisions *might* have prevented the confrontation. Neither the Supreme Court nor the Ninth Circuit has recognized such a rule, this Court should not create such a rule.

### G. THE DISTRICT COURT CORRECTLY HELD OFFICER PHAN IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity protects government officials from liability unless (1) the official violated a constitutional right, and (2) the unlawfulness of the challenged conduct was clearly established at the time of the alleged violation. District of Columbia v. Wesby, 583 U.S. 48, 63, 138 S. Ct. 577, 199 L.Ed.2d 453 (2018). Courts may address either prong first and may resolve a case solely on the clearly-established-law inquiry. Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009).

As explained above, Appellants cannot satisfy the first prong of the qualified immunity analysis. As Appellants failed to establish a constitutional violation at the district court level, summary judgment was correctly entered. The qualified immunity analysis appropriately ended there, and this Court should carry that analysis no further.

Even if this Court were to disagree and conclude that Appellants established a constitutional violation, Officer Phan is independently entitled to qualified immunity because Appellants cannot satisfy the second prong. Appellants identify no clearly established law placing the alleged unlawfulness of Officer Phan's conduct beyond debate under the unique circumstances confronting him.

### 1. Appellants Bear the Burden of Identifying Clearly Established Law That Squarely Governs the Circumstances Confronting Officer Phan.

Qualified immunity is not merely a defense to liability; it is an immunity from suit protecting "all but the plainly incompetent or those who knowingly violate the law." Wesby, 583 U.S. at 63 (*quoting* Malley v. Briggs, 475 U.S. 335, 341 (1986)). Once qualified immunity is invoked, the burden shifts to the plaintiff to identify clearly established law prohibiting the challenged conduct. Shafer v. County of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017).

The Supreme Court has repeatedly instructed courts not to define clearly established law at a high level of generality. Kisela v. Hughes, 584 U.S. 100, 104, 138 S. Ct. 1148, 200 L.Ed.2d 449 (2018); Mullenix v. Luna, 577 U.S. 7, 12, 136 S. Ct. 305, 193 L.Ed.2d 255 (2015). Consistent with this Supreme Court precedent, Appellants must identify authority that "squarely governs" the specific circumstances presented and places the constitutional question "beyond debate." Brosseau v. Haugen, 543 U.S. 194, 201, 125 S. Ct. 596, 160 L.Ed.2d 583 (2004); Wesby, 583 U.S. at 63. In the absence of controlling authority, clearly established law may arise only from a "robust consensus of cases of persuasive authority." Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). No such controlling authority or consensus exists here.

Accordingly, the relevant inquiry is not whether excessive force is generally unlawful or whether a vehicle may, in some circumstances, constitute deadly force. The question is considerably narrower:

> **Whether, in January 2021, clearly established law would have informed every reasonable officer that using a patrol vehicle to escape after being surrounded, immobilized, and attacked by a hostile crowd violated the Fourth Amendment.**

If Appellants cannot define the right with that degree of specificity, qualified immunity applies. The Supreme Court has repeatedly rejected attempts to define clearly established law at a higher level of abstraction because doing so "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Wesby, 583 U.S. at 64 (*quoting* Plumhoff v. Rickard, 572 U.S. 765, 779 (2014)).

**2. Appellants Identify No Clearly Established Law Prohibiting Officer Phan's Conduct.**

Appellants identify no Supreme Court decision, Ninth Circuit decision, or robust consensus of persuasive authority involving an officer attempting to escape after a hostile crowd had surrounded his patrol vehicle, obstructed its movement, attacked the vehicle, and prevented the officer from leaving the scene.

Instead, Appellants rely on generalized propositions that a vehicle may constitute deadly force and that deadly force may not be used against individuals who pose no immediate threat. AOB at 56-59. But the Supreme Court has repeatedly

rejected attempts to define clearly established law at that level of generality. *See* Kisela, 584 U.S. at 104; Mullenix, 577 U.S. at 12; Wesby, 583 U.S. at 63.

Nor do Appellants' authorities remotely resemble the circumstances presented here. *Tennessee v. Garner* involved an officer shooting a fleeing suspect to prevent escape. 471 U.S. 1 (1985). *Scott v. Harris*, 550 U.S. at 372 (2007), involved an officer intentionally using his patrol vehicle to terminate a suspect's flight. The remaining authorities relied upon by Appellant likewise involve officers attempting to stop, apprehend, detain, or otherwise acquire control over another person. This case presents the opposite circumstance.

The undisputed evidence demonstrates that Officer Phan was not attempting to apprehend, detain, or control Appellants. He was attempting to free himself from restraint. His patrol vehicle had been hemmed in by the crowd. One participant repeatedly urged the crowd to "Block the cops" and was later convicted of unlawful imprisonment for restraining Officer Phan, obstruction of a law enforcement officer, and malicious mischief arising from that conduct. 1-SER-048-57; 1-SER-064.

Appellants bear the burden of identifying precedent that ***clearly*** prohibited Officer Phan's conduct under those circumstances. They have identified none. At a minimum, reasonable officers could disagree regarding the legality of using a patrol vehicle to escape after being surrounded, immobilized, and attacked by a hostile

crowd during an illegal street-racing takeover. Qualified immunity exists precisely for such situations.

The district court therefore correctly held that Officer Phan is entitled to qualified immunity and judgment should be affirmed.

## H. THE DISTRICT COURT CORRECTLY DISMISSED APPELLANTS' STATE-LAW NEGLIGENCE CLAIMS.

The district court correctly dismissed Appellants' negligence claims, and the judgment should be affirmed for four independent reasons. First, Appellants do not challenge the district court's conclusion that the public duty doctrine bars their negligence claims – the principal basis on which the district court entered summary judgment. Their *Opening Brief* does not mention the public duty doctrine, identify any applicable exception, or explain why the district court's analysis was erroneous. Second, even if the issue were properly before this Court (which it is not), the district court correctly concluded that the public duty doctrine bars Appellants' claims because Officer Phan owed no individualized duty to Appellants. Third, the undisputed record establishes that Officer Phan did not breach any duty of reasonable care. Finally, Appellants' negligence claims fail because they merely repackage the same intentional conduct underlying their Fourth Amendment excessive-force claim as ordinary negligence – this is prohibited by Washington law.

### 1. Appellants Forfeited Any Challenge to the District Court's Public Duty Doctrine Ruling.

The district court independently dismissed Appellants' negligence claims under Washington's public duty doctrine. Yet Appellants never argue that the district court misapplied the doctrine, identify any error in its analysis, or even so much as mentioned the public duty doctrine in their *Opening Brief*.

Instead, Appellants merely recite the general elements of negligence and assert that police officers owe a duty to exercise reasonable care. AOB 65–67. Those general propositions do not address the basis for the district court's ruling below – that Officer Phan owed no individualized duty to Appellants under the public duty doctrine – and therefore provide no basis for reversal.

**An appellant bears the burden of demonstrating reversible error.** Arguments not "specifically and distinctly" raised in the opening brief are forfeited. *See* Paladin Assocs. v. Mont. Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (holding that the appellant's failure to develop any challenge to a conclusion by the district court waives the issue); Greenwood, 28 F.3d at 977; Independent Towers of Wash. v. Washington, 350 F.3d 925, 929–30 (9th Cir. 2003). Because Appellants fail to challenge any independent ground supporting the judgment, this Court should affirm the dismissal of their negligence claims on that basis alone.

Even if this Court finds the issue had been preserved such that it is properly before this Court, the district court correctly concluded that the public duty doctrine bars recovery.

2. **The Public Duty Doctrine Independently Bars Appellants' Negligence Claims.**

To prevail on a negligence claim under Washington law, a plaintiff must establish (1) the existence of a duty owed to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) proximate causation. Mancini v. City of Tacoma, 196 Wn.2d 864, 879, 479 P.3d 656 (2021). Where the defendant is a governmental entity or public official, however, the threshold inquiry is whether the alleged duty was owed to the plaintiff individually or instead to the public at large. Beltran-Serrano v. City of Tacoma, 193 Wn.2d 537, 549, 442 P.3d 608 (2019).

The public duty doctrine reflects the principle that "a governmental entity's breach of a duty owed to the general public cannot sustain a tort claim for negligence as a matter of law." Norg v. City of Seattle, 200 Wn.2d 749, 757, 522 P.3d 580 (2023). As the Washington Supreme Court recently explained, "[i]f the duty that the government allegedly breached was owed to the public at large, then the public duty doctrine applies; if the duty was owed to an individual, then the public duty doctrine does not apply." Id. at 758. Thus, to impose tort liability on a governmental entity or public official, a plaintiff must identify an individualized duty owed specifically to the plaintiff rather than a governmental obligation shared by the public generally.

Beltran-Serrano, 193 Wn.2d at 549; Munich v. Skagit Emergency Commc'n Ctr., 175 Wn.2d 871, 879–80, 288 P.3d 328 (2012).

The doctrine applies here. Officer Phan was responding to reports of an illegal street-racing takeover involving hundreds of participants occupying a public intersection. His efforts to investigate criminal activity, restore order, disperse the crowd, and reopen the public roadway were quintessential law-enforcement functions undertaken for the benefit of the public generally – not for any particular individual.

Appellants principally rely on *Beltran-Serrano*, but that decision underscores why their negligence claim fails. There, the Washington Supreme Court recognized an individualized duty because the plaintiff's negligence claim arose from "Officer Volk's direct interaction with him, not the breach of a generalized public duty." Beltran-Serrano, 193 Wn.2d at 551. The Washington Supreme Court emphasized that recognizing such a duty "does not open the door to potential tort liability for a city's statutorily imposed obligation to provide police services, enforce the law, and keep the peace. These statutory duties have always been, and will continue to be, nonactionable duties owed to the public at large." Id. at 551–52. Those are precisely the duties Officer Phan was performing here.

Unlike the officer in *Beltran-Serrano*, Officer Phan was not engaged in a direct, affirmative, one-on-one interaction with either of the Appellants. Officer Phan

responded to an unfolding public-order emergency involving hundreds of participants. Appellants were merely members of the crowd, and Appellant Williams testified he was unaware police officers were even present until after the incident occurred. 6-ER-1506.

Because Officer Phan was carrying out the City's generalized obligation to provide police services, enforce the law, and keep the peace – not engaging in the type of individualized interaction present in *Beltran-Serrano* – the public duty doctrine independently bars Appellants' negligence claims.

### 3. Even Assuming an Individualized Duty Existed, Officer Phan Did Not Breach Any Duty of Reasonable Care.

Even if Appellants could establish the existence of a cognizable duty, they cannot establish breach.

A defendant breaches the common-law duty of reasonable care only by failing to exercise the care that a reasonably prudent person would exercise under the same or similar circumstances. Estate of Templeton v. Daffern, 98 Wn. App. 677, 682, 990 P.2d 968 (2000). The relevant inquiry is therefore not whether an officer's actions can be criticized with the benefit of hindsight, but whether the officer acted reasonably under the circumstances confronting him at the time.

Appellants' entire breach argument consists of the assertion that Officer Phan "smashed his police vehicle into a crowd of pedestrians" and therefore acted

negligently. AOB at 66. That formulation improperly strips the incident of the circumstances confronting Officer Phan and evaluates his conduct in isolation.

The undisputed evidence establishes that Officer Phan was responding to a rapidly evolving public-order emergency. Crowd members surrounded his patrol vehicle, prevented him from leaving, struck the vehicle, and repeatedly urged others to "Block the cops." One participant was later convicted of unlawful imprisonment and obstruction of a law enforcement officer. Faced with those circumstances, Officer Phan moved his patrol vehicle forward in an effort to extricate himself from the crowd and restore his freedom of movement.

Whether some alternative course of action might, in hindsight, have produced a different outcome is not the legal question. The question is whether a reasonably prudent officer confronted with the same emergency circumstances would have acted unreasonably by attempting to escape. On this record, no reasonable jury could so conclude. As discussed above, Officer Phan proceeded as slowly and carefully as possible while attempting to navigate through an opening in the crowd and avoid injury to those around him. The facts that demonstrate that Officer Phan acted in an objectively reasonably manner under the Fourth Amendment also establish that he exercised reasonable care under Washington negligence law.

Accordingly, even assuming a relevant duty existed, Appellants cannot establish breach.

### 4. Appellants Cannot Recast an Alleged Intentional Use of Force as Ordinary Negligence.

Appellants' negligence claims fail for an additional and independent reason: they are based *entirely* on the same conduct underlying their Fourth Amendment excessive-force claim.

Although the district court concluded in a footnote that *Beltran-Serrano* foreclosed Appellees' argument, that reading extends *Beltran-Serrano* beyond its holding. 1-ER-016, n.8. This Court may affirm on any ground supported by the record. Olson v. Morris, 188 F.3d 1083, 1085 (9th Cir. 1999). *Beltran-Serrano* did not hold that a plaintiff may relabel the very act constituting an alleged intentional use of force as ordinary negligence.

Rather, *Beltran-Serrano* recognized a negligence claim because the plaintiff alleged a series of independent negligent acts and omissions that preceded – and were analytically distinct from – the officer's subsequent use of force.

Specifically, the officer allegedly failed to follow appropriate mental-health protocols, failed to utilize available communication tools, and otherwise escalated the encounter during several minutes of direct interaction with a nonviolent, mentally ill individual before ultimately using force. Beltran-Serrano, 193 Wn.2d at 550–51. The Washington Supreme Court carefully distinguished those alleged pre-force acts from the subsequent shooting itself. Id. It did not hold that the intentional act of firing the weapon constituted ordinary negligence.

Appellants allege no comparable conduct here. Their negligence argument spans only two pages and identifies a single allegedly negligent act: Officer Phan's deliberate decision to move his patrol vehicle forward while attempting to escape the crowd. AOB 65 - 67. That is the identical conduct Appellants contend constituted an intentional application of force under the Fourth Amendment.

Throughout this litigation, Appellants have consistently characterized Officer Phan's conduct as intentional. Appellants' First Amended Complaints allege that Officer Phan "chose" to drive through the crowd and "used excessive force." 1-SER-074, 076; 1-SER-085, 087. Likewise, Appellants *Opening Brief* asserts that Officer Phan ***intentionally*** "smashed his police vehicle into a crowd of pedestrians" and therefore acted negligently. AOB 14, 67.

Those allegations describe deliberate conduct – not inadvertence, mistake, or carelessness. Washington courts look to the substance of the alleged conduct rather than the label attached to the claim. Boyles v. City of Kennewick, 62 Wn. App. 174, 177, 813 P.2d 178 (1991). A plaintiff cannot transform intentional conduct into negligence merely by attaching a different label. To state a negligence claim, the complaint must allege facts supporting an unintentional breach of a legal duty. Grange Ins. Ass'n v. Roberts, 179 Wn. App. 739, 769, 320 P.3d 77 (2013), review denied, 180 Wn.2d 1026 (2014).

Although Appellants criticize Officer Phan's tactical decisions elsewhere in their *Opening Brief*, they do not rely on those alleged decisions as the basis of their negligence claim. AOB 65-67. Nor could they. Appellants offered no admissible expert testimony, no policy, no training standard, and no other evidence establishing that any pre-force tactical decision fell below the applicable standard of care. Instead, they simply relabel the challenged intentional use of force itself as negligence. That is not what *Beltran-Serrano* permits.

Having characterized Officer Phan's conduct as an intentional application of force for purposes of their Fourth Amendment claim, Appellants cannot simultaneously recast ***that identical conduct*** as ordinary negligence without identifying some separate and independent negligent act or omission. They identify none. Because Appellants' negligence claims rest entirely on the same deliberate conduct underlying their excessive-force claims, they fail as a matter of law.

Appellants' negligence claims fail for multiple independent reasons. Appellants do not challenge the district court's principal basis for dismissal, the public duty doctrine independently bars recovery, the undisputed record establishes no breach of any duty of reasonable care, and Appellants' remaining theory merely relabels the same alleged intentional use of force as ordinary negligence. The district court judgment should therefore be affirmed.

## VI. CONCLUSION

This appeal asks the Court to adopt constitutional rules that neither the Supreme Court nor this Court have ever recognized. Appellants ask the Court to hold that a police officer attempting to escape an unlawful restraint imposed by a hostile crowd objectively seizes every person affected by that attempt, and that discretionary tactical decisions preceding the encounter independently create Fourth Amendment liability. Existing Supreme Court and Ninth Circuit precedent foreclose both propositions.

The undisputed evidence establishes that Officer Phan did not intend to restrain Appellants. He intended to terminate an unlawful restraint imposed upon himself. Even assuming a seizure occurred, his measured effort to extricate himself from an escalating and dangerous situation was objectively reasonable under the totality of the circumstances. At a minimum, no clearly established law placed the alleged unlawfulness of Officer Phan's conduct beyond debate.

Appellants' state-law negligence claims likewise fail because they abandoned any meaningful challenge to the district court's public duty doctrine ruling, the public duty doctrine independently bars recovery, the record establishes no breach of any duty of reasonable care, and Appellants merely repackage their intentional force claim as ordinary negligence.

The Fourth Amendment protects against unreasonable governmental restraints on liberty. It does not transform an officer's effort to regain his own freedom of movement into a seizure of everyone affected by that effort, nor does it constitutionalize hindsight disagreements over discretionary police tactics. Because Appellants have failed to identify any reversible error in any of the district court's rulings, this Court should affirm the judgments in their entirety.

DATED this July 6, 2026

CHRISTOPHER D. BACHA, CITY ATTORNEY

By: /s/Michelle N. Yotter
MICHELLE N. YOTTER
WSBA #49075
Deputy City Attorney
Attorney for Defendant City of Tacoma

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-8171, 25-8168

I am the attorney or self-represented party.

**This brief contains** 12,865 **words,** including [ ] words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated [ ].
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Michelle N. Yotter **Date** 07/06/2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

**9TH Cir. Case No. 25-8171, 25-8168**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Yohannes Sium, Esq.
Law Office of Yohannes K. Sium,
PLLC
119 1st Avenue South Suite 500
Seattle, Washington 98104

David B. Owens
Loevy & Loevy
c/o Civil Rights And Justice Clinic
University Of Washington Law
School
William H. Hates Hall, Ste. 265
P.O. Box 85110
Seattle, WA 98145

*Attorneys for Appellants*

Signed at Tacoma, WA on July 6, 2026

/s/ *Gisel Castro*
GISEL CASTRO